Filed 8/25/21  P. v. Davenport CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICKY MARQUES DAVENPORT,<br><br>Defendant and Appellant. | C091623<br><br>(Super. Ct. No. NCR96230) |

Defendant Ricky Marques Davenport pleaded guilty to elder abuse, assault with a deadly weapon, and making a criminal threat.  Although in accordance with the plea agreement, the trial court sentenced defendant to a term longer than is authorized by law.

On appeal, defendant asks us to reverse his conviction and provide him an opportunity to withdraw his plea based on the unauthorized sentence.  He also says the sentences for the assault and/or criminal threat convictions should be stayed under Penal

1

Code section 654 (statutory section citations are to the Penal Code). We remand the case and direct the trial court to vacate defendant's sentence.

Our disposition voids the plea agreement and the matter will proceed accordingly. The defendant and the prosecution will have the opportunity to enter into a new plea agreement acceptable to the court. If the parties cannot agree on a plea acceptable to the court, the matter will proceed to trial

## FACTS AND HISTORY OF THE PROCEEDINGS

Defendant lived with the victim, his 68-year-old grandmother. One day, the victim went to a casino, where she encountered defendant, who was intoxicated and yelled at her. She returned home, where defendant again confronted her, angry that she had gone to the casino because she had earlier declined to take him to the recycling center. He screamed in her face, saying "he hated her" and demanding to be called "Stefanos."

Defendant punched the victim in the face. She tried to use her cell phone to call for help, but defendant knocked the cell phone to the floor. He then lit a roll of paper towels on fire and threw it at the victim; she brushed the burning embers off her chest and extinguished them on the ground with her cane.

The victim yelled for her sister, who was outside, to call the sheriff's department. Defendant then poked the victim in the back, pretending that he had a gun and threatening to kill her. He got a knife and made stabbing motions at her chest, then put the knife against her throat while screaming, "before suddenly dropping the knife and falling to the floor, as if he passed out." "[M]oments later," defendant woke up and got another knife, which he used to cut his own arms while yelling at the victim.

A sheriff's deputy arrived and found defendant holding the victim down in a chair. Defendant had his right hand concealed behind his back and said, "No, this is going to happen. You don't know what I have," while the victim "sobb[ed] hysterically." The

2

deputy pointed his gun at defendant and ordered him outside, but defendant refused. Eventually, the deputy convinced defendant to follow his instructions and the deputy was able to arrest him.

Defendant was later interviewed and said he had "a few mental problems and I take it out on people." He said that he frequently argued with the victim, and remembered arguing with her after she returned from the casino. He said he was angry and lit a roll of paper towels on fire "to scare the victim." He denied throwing the paper towels at the victim, hitting the victim, or threatening her.

The prosecution charged defendant with elder abuse (§ 368, subd. (b)(1); count I), assault with a deadly weapon (a knife) (§ 245, subd. (a)(1); count II), and making a criminal threat (§ 422, subd. (a); count III). The information listed the sentencing range for the elder abuse count as three, six, or eight years. Defendant pleaded guilty to all three counts. The plea agreement stated that the maximum sentence for the elder abuse count was eight years. On the second page of the agreement, the parties described the agreement as an "open plea," but agreed to a "midterm maximum on [the] primary term for § 368 P.C. which would be 6 yrs. with other cts. max period of confinement would be 7 yrs. 8 mos." The parties reiterated this understanding at the change of plea hearing, saying that although the elder abuse count had an eight-year maximum sentence, the plea would have a maximum period of confinement of seven years eight months, based on a six-year midterm sentence for the elder abuse count.

At the sentencing hearing, the court suspended imposition of sentence, warning defendant he faced a maximum of seven years eight months in state prison if he did not stay within the conditions of probation, and placed defendant on five-years probation. Later that year, defendant admitted he violated probation and the court revoked, then reinstated probation.

Two years later, defendant admitted to another probation violation. The prosecution asked the trial court to impose the midterm sentence on the elder abuse

3

count, with consecutive sentences for the assault and criminal threat counts. The trial court imposed a seven-year eight-month sentence, composed of six years for the elder abuse count, one year (one-third the midterm) for the assault with a deadly weapon count, and eight months (one-third the midterm) for the criminal threats count.

DISCUSSION

I

*Incorrect Sentencing Triad*

Both parties agree that, contrary to the terms in the plea agreement, the sentencing triad for count I (elder abuse) was two, three, or four years, not three, six, or eight years. Thus, the trial court's sentence of six years on count I was unauthorized, and the parties ask us to remand the case with varying instructions. We agree the case must be remanded.

According to the plea agreement, the maximum term on count I was the midterm, which the agreement stated was six years. But the midterm sentence for elder abuse as charged in the information is actually three years. (§ 368, subd. (b)(1).) Similarly, the upper term sentence for elder abuse as charged in the information is four years, not eight years. (*Ibid.*)

In *People v. Superior Court* (*Sanchez*) (2014) 223 Cal.App.4th 567, we considered a similar situation in which the parties entered into a plea agreement with an unauthorized sentence. There, the defendant was charged with attempted murder, along with a number of other counts and sentence enhancements. (*Id.* at p. 570.) The parties entered into a plea agreement "under which [the] defendant agreed to plead no contest to one count of attempted murder and to be sentenced to an indeterminate term of 25 years to life in exchange for dismissal of the other counts." (*Ibid.*) Before sentencing, the prosecution noted that the "statutory punishment for attempted murder is life with the possibility of parole, with a minimum term of seven years," not an indeterminate term of 25 years to

4

life.  (*Ibid.*)  The court imposed a sentence of life with the possibility of parole, rather than the term the parties had bargained for, and the prosecution filed a petition for writ of mandate.  (*Id.* at p. 571.)

Applying contract principles to the plea agreement, we determined the parties had entered into the agreement under a mistake of law, which "went to the very heart of the agreement--that is, to the term of imprisonment defendant agreed to in exchange for his no contest plea and dismissal of other counts.  In such a case, free and mutual consent is absent, and rescission is available to the aggrieved party." (*People v. Superior Court* (*Sanchez*) *supra*, 223 Cal.App.4th at pp. 573-574.)  Because the bargain was "contrary to law," we concluded the "judgment must be reversed, the plea vacated, and the parties placed in the same position with respect to each other that they occupied before they entered into the plea bargain." (*Id.* at p. 577.)

Here, the parties entered into a plea agreement under the mistaken belief that the applicable sentencing triad for elder abuse was three, six, or eight years, rather than the two, three, or four years permitted by statute.  The court then applied the agreement to impose the unauthorized sentence of six years on the elder abuse count.  Just as in *Sanchez*, the mistake went to the heart of the plea agreement, and the agreement was thus contrary to law.  We will follow *Sanchez*, vacate the plea agreement, and place the parties in the position they occupied before they entered into the agreement.

II

*Section 654*

Defendant contends the sentences on counts II (assault with a deadly weapon) and III (criminal threats) should have been stayed under section 654 because they were committed in the same course of conduct as count I.  Our determination that defendant's sentence and plea bargain must be vacated makes it unnecessary to resolve his claim of sentencing error.

5

DISPOSITION

The matter is remanded to the trial court with directions to vacate defendant's sentence and the plea bargain, to permit him to withdraw his plea, and to conduct further proceedings consistent with this opinion.

                                      _____

                                      HULL, J.

We concur:

_____

BLEASE, Acting P. J.

_____

ROBIE, J.